IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **CYNTHIA WILDER,** | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | |
| v. | ) | 1:09-CV-2039-JOF |
| | ) | |
| **MIDLAND CREDIT MANAGEMENT,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY FURTHER PROCEEDINGS INCLUDING DISCOVERY

COMES NOW, Defendant Midland Credit Management, Inc. ("Defendant" or "Midland Credit"), and submits this brief in support of its Motion to Compel Arbitration and Stay Further Proceedings Including Discovery.

### SUMMARY OF ARGUMENT

Plaintiff obtained a loan from non-party Beneficial of Connecticut, Inc. on January 15, 2002, in the original principal amount of $2,419.92. The loan agreement was in writing and included an arbitration clause whereby Plaintiff agreed to arbitrate certain claims against certain entities for claims or actions related to the loan.

Plaintiff defaulted on the loan. Her creditor, Beneficial Connecticut, Inc., thereafter sold the defaulted account to non-party Midland Funding, LLC ("Midland Funding"). Defendant Midland Credit Management, Inc. collected the unpaid debt. Plaintiff asserts that Defendant's attempts to collect the debt violated the law. Defendant asserts that Plaintiff gave up her right to bring these claims in court and must instead adjudicate her claims through arbitration.

## STATEMENT OF FACTS

In January 2002, Plaintiff entered into a Loan Repayment and Security Agreement (the "Account") with Beneficial Connecticut, Inc. (hereinafter "Beneficial").[1] The original principal amount of the loan was $2,419.92 .[2] On or about August 18, 2006, non-party Midland Funding, LLC purchased the Account from Beneficial.[3] At the time of the purchase, the unpaid balance on the Account was $2,474.60.[4] Defendant Midland Credit collected on the unpaid balance.[5]

Included in the loan agreement is an arbitration agreement, whereby the parties agreed that either party may elect to arbitrate any claims they might have

---

[1] Declaration of Scott O'Donnell, ¶ 6.

[2] Id.

[3] Declaration of Scott O'Donnell, ¶ 7.

[4] Id.

[5] Id.

against the other or third parties.  The arbitration agreement covers "third party claims" and claims arising "from or relating to . . . the relationships which result from" the loan agreement.[6]

The arbitration agreement states in part:

> This Arbitration Rider is signed as part of your Agreement with Lender and is made part of that Agreement.  By signing this Arbitration, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-exiting or future), including initial claims, counter-claims, and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("claim") shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.[7]

The arbitration agreement further states:

> THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.[8]

The agreement specifically identifies the Federal Arbitration Act ("FAA") as the controlling law upon which the agreement was reached.[9]

---

[6] Declaration of Scott O'Donnell, ¶ 6.
[7] Id.
[8] Id.
[9] Id.

3

Midland Credit elects arbitration pursuant to the loan agreement. On November 18, 2009, demand was made upon Plaintiff to arbitrate her claims.[10]

## ARGUMENT AND CITATION OF AUTHORITY

**1. The Federal Arbitration Act Applies**

The Federal Arbitration Act (the "FAA" or the "Act") provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. "[T]he word 'involving' . . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, in fact, to have involved interstate commerce." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 276-277 (1995)(emphasis in original).

The Eleventh Circuit has stated "credit cards generally are issued to applicants by out-of-state financial institutions, and credit-card account numbers travel across state lines, both electronically and by mail." United States v. Klopf, 423 F.3d 1228, 1241 (11th Cir. Fla. 2005). By analogy, Beneficial Connecticut is a financial institution, and under Klopf, the interstate commerce element of the FAA

---

[10] Declaration of John H. Bedard, Jr.

is satisfied. In addition, the Agreement itself specifically provides that the Federal Arbitration Act governs.[11] This constitutes additional compelling evidence that the FAA's interstate commerce requirement has been satisfied. <u>Staples v. The Money Tree, Inc.</u>, 936 F. Supp. 856, 858 (M.D. Ala. 1996); <u>Thomas O'Connor & Co. v. Ins. Co. of North America</u>, 697 F. Supp. 563, 566 (D. Mass. 1988); <u>see</u> also <u>Volt Info. Sciences, Inc. v. Bd. Of Trustees</u>, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements according to their terms."). Accordingly, Plaintiff's loan agreement, which includes the agreement to arbitrate, specifically states "[t]his Arbitration Rider is made pursuant to a transaction involving interstate commerce" within the meaning of the FAA, and the FAA applies to this action.[12]

### 2. **<u>Federal Law Strongly Favors Enforcement of Arbitration Agreements</u>**

The FAA specifically provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of

---

[11] Declaration of Scott O'Donnell, ¶ 6.

[12] <u>Id.</u>

one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.[13]

If a party refuses to participate in arbitration, the Act requires the Court to order the parties "to proceed to arbitration in accordance with the terms of the agreement."[14]

The Supreme Court has reaffirmed that federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements. <u>Randolph v. Green Tree Financial Corp.</u>, 539 U.S. 79, 121 S. Ct. 513 (2000); <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 115 S. Ct. 1920 (1995); <u>Moses H. Cone Memorial Hospital. v. Mercury Construction Corp.</u>, 460 U.S. 1, 103 S. Ct. 927 (1983); <u>see</u> <u>also</u> <u>Nobles v. Rural Comm. Ins. Servs.</u>, 122 F. Supp.2d 1290, (M.D. Ala. 2000). Congress specifically enacted the FAA to "revers[e] centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." <u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 225-26 (1987) (citations omitted).

The Supreme Court has stressed that arbitration is also favored in consumer disputes:

> We agree that Congress, when enacting this law [*i.e.* the FAA], had the needs of consumers, as well as others, in mind . . .[T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business

---

[13] 9 U.S.C. § 3.
[14] 9 U.S.C. § 4.

6

alike, corporate interests [and] individuals. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.[15]

Arbitration agreements remain favored and enforceable even in the face of an alleged disparity in the parties' bargaining power. Randolph, 121 S. Ct. at 522-23 (enforcing arbitration clause in dispute between consumer and lender); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32-33 (1991) (enforcing arbitration clause in dispute between employer and employee); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir.) (enforcing arbitration clause in dispute between consumer and computer manufacturer), cert. denied, 522 U.S. 808 (1997); Harris v. Green Tree Financial Corp., 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration clause in dispute between consumer and lender).

This Court should enforce the terms of arbitration clause contained in the Plaintiff's Loan Agreement and compel this action to arbitration.

3. **The Plaintiff's Claims Fall Squarely Within The Broad Scope Of The Arbitration Agreement.**

A request to arbitrate a particular grievance should not be denied unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Technologies, Inc. v. Communication Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d

---

[15] Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. at 280 (citations omitted, brackets in original).

7

648 (1986) (citation and internal quotation omitted).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. Accord Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 385 (11th Cir. 1996); Collins v. Internat'l Dairy Queen, Inc., 2 F. Supp.2d 1465, 1468 (M.D. Ga. 1998). As the Eleventh Circuit explained: "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations . . . the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." MS Dealer Serv. Corp. v Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (citations omitted).

   In determining whether a particular claim falls within the scope of the arbitration agreement, the Court's focus is on the factual underpinnings of the claim rather than the legal theories alleged in the complaint. Gregory, 83 F.3d at 384; Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). As the Seventh Circuit explained: "The touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause." Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted).  Additionally, the Court may not reach the merits of

an arbitrable claim. <u>Kelly v. Merrill Lynch, Pierce, Fenner & Smith</u>, 985 F.2d 1067, 1069 (11th Cir. 1993), <u>cert</u>. <u>denied</u>, 510 U.S. 1011 (1994).

A true and correct copy of the arbitration agreement is attached to the Declaration of Scott O'Donnell as Exhibit "A." The arbitration agreement provides that upon the election of either party, even without the other's consent, both parties must resolve by binding arbitration "any claim, dispute, or controversy" which results from this Agreement.[16] This broadly defines the scope of the claims, disputes, or controversies for which arbitration can be demanded:

> By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-exiting, present or future), including initial claims, counter-claims, and third party claims arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim") shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed."[17]

The Plaintiff's allegations are precisely the type of "claim, dispute, or controversy" which falls under the broad definition of "Claim" in the agreement. The factual underpinning of Plaintiff's claim relates to the efforts of Midland

---

[16] <u>See</u> para. 1, Exhibit "A" to Declaration of Scott O'Donnell.

Credit to service and collect the account on behalf of Midland Funding, LLC. The claim therefore is one "arising from…the relationships which result from this Agreement." In addition, because the arbitration agreement expressly reaches claims based upon many forms of law, including statutory law, it clearly extends to Plaintiff's claims, which are all based upon the FDCPA.

It does not matter that Midland Credit was not an original party to the loan agreement. A nonparty to an arbitration agreement may nonetheless benefit from and enforce an arbitration agreement if the language of the agreement is broad enough to encompass claims involving the nonparty. See e.g., Blinco v. Green Tree Servicing, LLC, 400 F. 3d 1308, 1311-1312 (11th Cir. 2005). The arbitration agreement expressly extends to claims that might be asserted by Plaintiff against certain non-parties, including Midland Credit. Specifically, the agreement states that it extends to "any claim, dispute, or controversy…arising from or relating to this Agreement or the relationships which result from this Agreement."[18] The agreement also specifically contemplates "third party claims" as being the type of claims that can be compelled to arbitration.[19] The assignment of the account from Beneficial to Midland Funding, LLC, and its servicing by Midland Credit is the type of relationship which resulted from the Loan Repayment and Security

---

[17] Id.
[18] Id.
[19] Id.

Agreement between Plaintiff and Beneficial.  Claims against the Defendant may be compelled to arbitration.

The unambiguous scope of the arbitration agreement thrusts the Plaintiff's claims squarely within its coverage.  No reasonable interpretation of the arbitration agreement can deny its broad coverage of the Plaintiff's claims against Midland Credit.  The arbitration agreement covers the present claims and disputes between the Plaintiff and Midland Credit and this Court should compel the Plaintiff to resolve these claims through binding arbitration as required by the terms of Plaintiff's own loan agreement.

4. **The Entire Action Should Be Stayed Pending Arbitration**

Section 3 of the FAA, 9 U.S.C. §3, mandates a stay of all claims submitted to compulsory arbitration.  If the Court grants this Motion to Compel Arbitration, then Defendant respectfully requests that the Court also stay all further proceedings in this case, including discovery, until further order of the Court.

## CONCLUSION

Defendant respectfully requests that this Court grant its Motion to Compel Arbitration by ordering the Plaintiff and Midland Credit to arbitrate their disputes pursuant to the Loan Repayment and Security Agreement and stay all further proceedings, including all discovery, between the parties.

This 4th day of January, 2010.

                Respectfully submitted,

                <u>/s/ John H. Bedard, Jr.</u>
                John H. Bedard, Jr.
                Georgia Bar No. 043473
                Counsel for Defendant

Bedard Law Group, P.C.
2810 Peachtree Industrial Blvd., Ste. D
Duluth, Georgia 30097
(678) 253-1871, ext. 244 (Phone)
(678) 253-1873 (Fax)
jbedard@bedardlawgroup.com